UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILL HARRIS LEONARD,

        Petitioner,

    v.

MILLICENT WARREN,

        Respondent.

_____/

CASE NO. 03-CV-71430-DT
JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | | |
|---|---|---|---|
| I. | RECOMMENDATION | | 2 |
| II. | REPORT | | 2 |
| | A. | Procedural History | 2 |
| | B. | Factual Background Underlying Petitioner's Conviction | 3 |
| | C. | Standard of Review | 4 |
| | D. | Prosecutorial Misconduct | 6 |
| | | 1. Clearly Established Law Generally | 7 |
| | | 2. Suppression Claim | 7 |
| | |   a. Clearly Established Law | 7 |
| | |   b. Analysis | 8 |
| | | 3. Undue Delay | 11 |
| | |   a. Clearly Established Law | 11 |
| | |   b. Analysis | 12 |
| | | 4. Inconsistent Theories | 12 |
| | E. | Ineffective Assistance of Counsel (Claim II) | 15 |
| | | 1. Clearly Established Law | 15 |
| | | 2. Failure to Call Witnesses | 16 |
| | | 3. Failure to Seek Dismissal | 18 |
| | F. | Conclusion | 20 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | | 20 |

1

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

      1.      Petitioner Bill Harris Leonard is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

      2.      On March 13, 1998, petitioner was convicted of one count of first degree murder, MICH. COMP. LAWS § 750.316, following a jury trial in the Jackson County Circuit Court. On March 19, 1998, he was sentenced to a mandatory term of life imprisonment without possibility of parole.

      3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

      I.      PROSECUTORIAL MISCONDUCT DENIED DEFENDANT A FAIR TRIAL.

      II.     THE TRIAL COURT PLAINLY ERRED IN NOT GIVING AN UNDISPUTED ACCOMPLICE WITNESS INSTRUCTION ON LATOYA BELL'S TESTIMONY.

      III.    THE TRIAL COURT STATED TO THE JURY THAT A BAT ADMITTED INTO EVIDENCE WAS "CERTAINLY" THE WEAPON USED IN THE KILLING, AND THAT NAIM RASHEED HAD IN FACT MADE A STATEMENT TO LATOYA BELL INCRIMINATING MR. LEONARD. THESE FINDINGS INVADED THE PROVINCE OF THE JURY, AND CONSTITUTED A PLAIN ERROR REQUIRING REVERSAL.

      IV.     INEFFECTIVE ASSISTANCE OF COUNSEL DENIED APPELLANT A FAIR TRIAL.

      V.      THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR, OVER OBJECTION, TO ARGUE HER CASE IN OPENING STATEMENT.

2

VI.  DEFENDANT, AN AFRICAN-AMERICAN, MUST HAVE A NEW TRIAL
     BECAUSE HIS ALL-WHITE JURY WAS NOT A FAIR CROSS-SECTION
     OF THE COMMUNITY.

VII. THE CUMULATIVE EFFECT OF ERROR WARRANTS A NEW TRIAL.

VIII. DEFENDANT'S MANDATORY-LIFE SENTENCE VIOLATES THE
     MICHIGAN CONSTITUTION BECAUSE IT IS NOT AN INDETERMINATE
     SENTENCE AND BECAUSE IT CONSTITUTES CRUEL OR UNUSUAL
     PUNISHMENT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and

sentence. *See People v. Leonard*, No. 214494, 2000 WL 33415969 (Mich. Ct. App. July 25,

2000) (per curiam).

4.  Petitioner sought leave to appeal these eight issues to the Michigan Supreme

Court. The Supreme Court denied petitioner's application for leave to appeal in a standard

order. *See People v. Leonard*, 465 Mich. 972, 641 N.W.2d 558 (2002).

5.  Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas

corpus on April 8, 2003. As grounds for the writ of habeas corpus, he raises the prosecutorial

misconduct and ineffective assistance of counsel claims that he raised in state court.

6.  Respondent filed his answer on October 28, 2003. He contends that petitioner's

claims are without merit.

B.  *Factual Background Underlying Petitioner's Conviction*

The factual background leading to petitioner's conviction was summarized by the

Michigan Court of Appeals:

> Testimony at trial indicated that defendant, his nephew Naim Abdur-Rasheed,
> and Latoya Bell drove from Detroit to Jackson for the purpose of assaulting
> Miles, who was the fiancée of Latoya's twin sister Latosha. Latoya was angry at
> Miles because of a prior incident in which he had fired shots at a house where

3

Latosha resided. When Latoya confronted Miles, he threatened her with a gun. Latoya subsequently told Rasheed and defendant that Miles needed to be beaten up. Rasheed and defendant agreed to do it, and they discussed different methods of killing him, including using a baseball bat.

On or about December 17, 1996 at approximately 2:30 a.m., a situation developed in which Miles was at Latosha's house. Latoya and her Uncle Tony arrived at the front door around the same time that defendant and Rasheed approached from defendant's car across the street. Defendant and Latoya both knew that Rasheed had the bat in his hand. Latoya and her uncle went inside the house. Defendant and Rasheed waited on the porch. When Miles came out, Rasheed swung at him and Miles began to run. Rasheed chased after Miles and defendant followed.

Defendant claimed that he intended to prevent an altercation, but heard a smack and then heard Miles screaming, whereupon he saw Rasheed standing over Miles' body at the top of the steps of a back porch and tried to pull Rasheed away. Defendant admitted that, in response to an epithet directed at him by Rasheed, he kicked the victim, but claimed it was merely a "nudge" to see if he was still alive. Defendant denied hitting Miles with the bat. Defendant testified that he pulled Rasheed down the stairs, went back to his car, picked up Latoya, and drove back to Detroit. However, Latoya testified that, during the drive home, both Rasheed and defendant bragged about the incident and both stated that they had cracked Miles in the head with the bat.

*Leonard*, 2000 WL 33415969, at * 2, slip op. 1-2.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed

by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27

(1997). Amongst other amendments, the AEDPA amended the substantive standards for

granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

4

the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined

by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Prosecutorial Misconduct*

Petitioner first contends that he was denied a fair trial by prosecutorial misconduct in violation of his due process rights under the Fourteenth Amendment of the U.S. Constitution. Petitioner claims that: (1) the prosecution improperly concealed Latoya Bell's explicit or implicit understanding or reasonable expectations that she would receive leniency in exchange for her

6

testimony; and (2) the prosecutor improperly argued that defendant Leonard had used the baseball bat and struck the fatal blow when she had argued in codefendant's trial that only Rasheed had used the bat and struck the fatal blow.

### 1.   *Clearly Established Law Generally*

The Due Process clause of the Fourteenth Amendment states: "No state. . . shall. . . deprive any person of life liberty, or property, without due process of law." This clause protects a criminal defendant's right to a fundamentally fair trial. "The Constitution's Due Process [Clause] guarantees every defendant the right to a fair trial." *Turner v Louisiana*, 379 U.S. 466, 471-472 (1965). "'[B]ecause the prosecutor is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. . ., it is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about one[.]'" *Stumpf v Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004) (quoting *Berger v United States*, 295 U.S. 78,88 (1935), *overruled on other grounds*, *Stirone v United States*, 361 U.S. 212 (1960)), *cert. granted*, ___ S. Ct. ___, 2005 WL 32977 (Jan. 7, 2005).

Petitioner claims that his due process constitutional rights were violated by prosecutorial misconduct. Petitioner claims that this prosecutorial misconduct included: Suppression of evidence, securing an 'undue delay' for tactical advantage, and the use of inconsistent or conflicting theories of prosecution.

### 2.   *Suppression Claim*

#### a. *Clearly Established Law*

"Suppression by [the] prosecution of evidence favorable to an accused upon request

7

violates due process where [the] evidence is material either to guilt or to punishment, irrespective of [the] good faith or bad faith of [the] prosecution." *Brady v Maryland*, 373 U.S. 83,87 (1963). Under *Brady*, a prosecutor may not suppress evidence of a deal for incriminating testimony from an accomplice in exchange for an offer of leniency. The prosecutor must disclose all offers that were taken by the accomplice. *See*, *Giglio v United States*, 405 U.S. 150, 153-154 (1972); *Napue v. Illinois*, 360 U.S. 264, 268-69 (1959).

*b. Analysis*

Petitioner first claims that the prosecution violated his due process rights under *Brady* by concealing evidence of consideration of a lenient sentence given to Latoya Bell in return for her incriminating testimony. In other words petitioner claims that there was a secret deal cut for incriminating testimony against petitioner by Latoya Bell at trial. Such a deal, if it were in existence and not disclosed to the jury, would violate petitioner's *Brady* rights, and would constitute a due process violation.

After reviewing the record, in addition to the material cited by the petitioner, the Court should conclude that there is insufficient evidence to support this claim of prosecutorial misconduct. The first part of the record cited by petitioner evidencing such a deal is the request of Latoya Bell and her counsel to discuss her sentencing in chambers with the trial judge. The trial judge, Judge Charles Nelson, in a signed affidavit denies this inference of any secret deal in existence between the prosecutor and Latoya Bell taking place in his chambers. There is simply no evidence put forth by petitioner that leads to the conclusion that there existed any explicit understanding between Latoya Bell and the prosecutor to incriminate petitioner at his trial. Second, petitioner argues that the lighter sentence sought by the

8

prosecution against Latoya Bell evidences such a secret deal. This argument runs contrary to established case law. A lighter sentence sought against a codefendant by the prosecution is not by itself evidence of consideration of a deal struck between the codefendant and the prosecution. The Sixth Circuit has flatly rejected this rational. In *Williams v Coyle*, 260 F.3d 684 (6th Cir. 2001), the Court held that "[t]he mere fact that [the witnesses] sentences were later altered is not evidence that a deal existed prior to their testimony at trial." *Id.* at 707. Latoya Bell's criminal sentence was not even altered; In fact she was not charged with a crime until after the petitioner's trial. Neither the fact that Latoya Bell was charged and convicted of the less serious crime of accessory after the fact nor the fact that she received a lighter sentence then petitioner establishes that there was a deal for her testimony.

Petitioner next argues that if an explicit agreement did not exist then an implicit agreement existed for Latoya Bell's incriminating testimony. Again, there is no evidence provided of any implicit deal struck between the prosecution and Ms. Bell for her testimony. The mere reasonable expectation of Ms. Bell that she would be charged with a less serious offense might have entered her mind at trial when she gave her testimony. This reasonable expectation, however, does not rise to the level of prosecutorial misconduct. Both petitioner and respondent cite and quote a passage from *Farkas v United States*, 2 F.2d 644 (6th Cir. 1924):

> Concededly, promises of immunity are admissible; they are, however rarely made. In as much as the question involved is the motive for testifying falsely and therefore the state of mind of the prosecuting witness, the relevant evidence is not alone the acts or attitude of the district attorney but anything else that would throw light upon the prosecuting witnesses' state of mind. It is therefore entirely proper, either by cross examination of the witness himself, or otherwise, to show a belief or even only a hope on his part that he will secure immunity or

9

a lighter sentence, or any other favorable treatment, in return for his testimony, and that, too, even if it be fully conceded hat he had not the slightest basis from any act or work of the district attorney for such belief or hope. *The fact that despite a plea of guilty long since entered, the witness had not yet been sentenced, is proper evidence tending to show the existence of such hope or belief.*

*Farkas*, 2 F.2d at 647 (emphasis added, denoting the petitioner's quotation of *Farkas*; the entire text was quoted by the respondent). This quotation from *Farkas* is not on point for two reasons. First, at the time of the trial, Latoya Bell had not been charged with a crime. No "plea of guilty long since entered" existed. In fact, Latoya Bell was charged, tried and convicted of accessory after the fact many months after the petitioner's trial.

Second, *Farkas* addresses only the admissibility of evidence relating to a witness's expectation of leniency. It does not establish a rule of due process requiring the disclosure of such evidence. Any subjective expectation of leniency or motivation to incriminate petitioner in the mind of Latoya Bell when she testified does not violate the due process rights of the petitioner. Further, this inference of a potential reasonable expectation of leniency was brought out into open court by petitioner's counsel on cross examination:

> Q:  You were present in the room with your attorney when-on December 17th when you met with Detective Crawford, didn't you?
> A:  Correct
> Q:  You heard Detective Crawford say you might have to testify against those two guys?
> A:  Yes.
> Q:  Do you remember saying, I'll do anything to get this off me?
> A:  Yes.
> Q:  Thank you, your Honor.

Trial Tr., at 635-36. Petitioner's counsel stated and thereby placed in the minds of the jurors that Latoya Bell's testimony was tainted because she was an accomplice testifying for the

prosecution, wishing to do whatever it takes to "get this off of her." Therefore, petitioner's counsel did receive a chance to refute any reasonable expectation on the part of Latoya Bell that her giving of incriminating testimony against petitioner would work in favor of her receiving a reduced sentence.

In short, no merit exists to the claim that a secret deal existed between Latoya Bell and the prosecution for her to give incriminating testimony at trial against the petitioner. Any reasonable expectation by Latoya Bell that she would receive lenient treatment from the prosecution for her incriminating testimony was brought out by petitioner's counsel at trial for the jurors to consider in handing down their verdict. Therefore, the Court should conclude that petitioner is not entitled to habeas relief on this claim. *See Abdur-Rasheed v. Jones*, 100 Fed. Appx. 357, 359 (6th Cir. 2004) (rejecting this identical claim as asserted by petitioner's codefendant).

### 3. *Undue Delay*

Petitioner next contends that he was denied his right to due process of law by the prosecutor's delay in bringing charges against him.

### a. *Clearly Established Law*

Just because there is a delay with the justice system, that does not mean that the delay constitutes prosecutorial misconduct for which the petitioner deserves a writ of habeas corpus under § 2254(d)(1). "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." *United States v. Marion*, 404 U.S. 307, 324 (1971). Prejudice alone, however, is insufficient to establish a due process violation.

11

The Court must also consider the reason for the delay, and generally only delay designed "solely to gain a tactical advantage" will amount to a due process violation. *See United States v. Lovasco*, 431 U.S. 783, 790-95 (1977).

### b. Analysis

Petitioner argues that there was a collateral adverse impact on his due process rights because of the delay in his proceedings due to the criminal proceedings then in process against codefendant Naim Rasheed. No evidence has been pointed to, or can be pointed to by the petitioner that the prosecutor delayed the trial of petitioner "solely to gain tactical advantage." Petitioner concedes that the delay was not to gain tactical advantage, but to try his codefendant, Naim Rasheed. Further, petitioner has identified no exculpatory evidence or testimony that was lost as a result of the delay. Therefore, the Court should conclude that petitioner is not entitled to habeas relief on this claim. *See United States v. Crawford*, 60 Fed. Appx. 520, 529-30 (6th Cir. 2003); *United States v. King*, 22 Fed. Appx. 567, 568 (6th Cir. 2001); *United States v. Butler*, 792 F.2d 1528, 1533-34 (11th Cir. 1986).

### 4. Inconsistent Theories

Finally, petitioner contends that he was denied a fair trial by the prosecutor's use of inconsistent theories to convict both him and his accomplice. In *Stumpf v. Mitchell, supra*, the Sixth Circuit held that a prosecutor's use of two conflicting theories concerning the identity of the shooter to convict both petitioner and accomplice of aggravated murder constituted a due process violation. *Stumpf*, 367 F.3d at 611-15. Despite the holding in *Stumpf*, however, petitioner is not entitled to habeas relief on this claim, for two reasons.

First, in *Stumpf* the petitioner had filed his habeas petition prior to the adoption of the

12

AEDPA, and thus the Sixth Circuit was free to consider the issue *de novo*. Here, however, petitioner's habeas claims are governed by the AEDPA, and therefore relief is available only if the Michigan Court of Appeals's decision was either contrary to or an unreasonable application of "clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *Stumpf*, as Sixth Circuit law, cannot establish federal law for purposes of habeas review, *see Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000), and thus is not controlling here. *See Burton v. Renico*, 391 F.3d 764, 772 n.2 (6th Cir. 2004) (Sixth Circuit case decided prior to AEDPA did not represent clearly established law and thus did not bind subsequent panel in post-AEDPA habeas action). Petitioner has cited, and I have found, no Supreme Court case even hinting, much less holding, that inconsistent theories of prosecution raise a due process violation, a conclusion supported by the absence of citation to any Supreme Court precedent in the Sixth Circuit's discussion of this issue in *Stumpf*. *See Stumpf*, 367 F.3d at 611-15. Thus, petitioner is not entitled to habeas relief on this basis alone.[1]

Second, even assuming that *Stumpf* represents clearly established law, petitioner cannot show that the prosecutor used inconsistent theories of guilt. Even under the view adopted in *Stumpf*, only "the use of inconsistent, irreconcilable theories to secure convictions against more than one defendant in prosecutions for the same crime violates the due process

---

[1]On January 7, the Supreme Court granted *certiorari* in *Stumpf* to consider this issue. *See Mitchell v. Stumpf*, ___ S. Ct. ___, 2005 WL 32977 (Jan. 7, 2005). Even assuming that the Court affirms the Sixth Circuit's decision, any decision by the Supreme Court will not affect this conclusion. As the Supreme Court made clear in *Williams*, clearly established law is to be determined as of the time of the state court decision under attack. *See Williams*, 529 U.S. at 412. Thus, no decision in *Stumpf* will alter the fact that there was no clearly established law at the time of the Michigan Court of Appeals's decision in petitioner's case.

13

clause." *Stumpf,* 367 F.3d at 611. In each of the cases in which a due process violation has been found, "the inconsistency in the subsequent presentation was essential in order to prosecute the individual in question. In other words, the Government in those subsequent cases could not have prosecuted the remaining individual for the same crime had the Government maintained the theory or facts argued in the earlier trial." *United States v. Dickerson,* 248 F.3d 1036, 1043-44 (11th Cir. 2001).

Here, there was no such inconsistency. It is true that the prosecutor argued at Rasheed's trial that Rasheed alone struck the fatal blow, and that at petitioner's trial she argued that Rasheed had inflicted the first blows but then petitioner had taken over and struck the final blow. *Compare* Trial Tr., at 764-65, *with* Trial Tr., in *People v. Abdur-Rasheed,* No. 97-75645-FC, at 699-701 (attached to petitioner's habeas application). However, in both cases the prosecutor argued consistently that it did not matter who in fact had struck the fatal blow. In petitioner's case, she argued, after discussing the evidence that petitioner struck the fatal blow:

> That brings us to an interesting point about the swinger of the bat because, Ladies and Gentlemen, the bottom line is that all three of them may as well have swung that bat because they're all equally guilty.
> All three of them may as well have been standing over Bobby's defenseless body swinging that bat and crush [sic] his skull because they all worked together to cause it. Remember what I explained to you in my opening statement about accomplices or aiders and abetters.
> Remember that we discussed that if you plan it, talk about it, participate in it, play any role in it, you are guilty. They're all guilty of aiding and abetting in first-degree murder, so they're all guilty of first-degree murder.
> They're all in for a penny, in for a pound, in for their own piece, in for the whole pie.

Trial Tr., at 767-68. Similarly, although the prosecutor argued in Rasheed's trial that he struck the final blow, she argued extensively that even if Rasheed's version were believed, "even in the

14

best possible scenario, he's guilty as an accomplice," and "in for a penny, in for a pound."
Trial Tr., in *People v. Abdur-Rasheed, supra,* at 702-03.

Thus, even though the prosecutor argued that a different person struck the fatal blow
in each trial, this argument was legally irrelevant. The prosecutor argued consistently in both
cases that it did not matter who struck the fatal blow, because both petitioner and Rasheed
were at a minimum guilty as aiders and abettors, and thus under Michigan law each was
punishable as a principal. *See People v. Palmer,* 392 Mich. 370, 378, 220 N.W.2d 393, 396
(1974); MICH. COMP. LAWS § 767.39. "[B]ecause there was evidence that supported both
theories, and since [petitioner] could have been convicted of aiding and abetting under either
theory," the prosecutor's argument did not deny petitioner a fair trial. *United States v. Paul,*
217 F.3d 989, 999 (8th Cir. 2000); *see also, Dickerson,* 248 F.3d at 1043; *Nguyen v. Lindsey,*
232 F.3d 1236, 1240-41 (9th Cir. 2000); *Nichols v. Scott,* 69 F.3d 1255, 1268-69 (5th Cir.
1995).

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief
on these claims.

E.    *Ineffective Assistance of Counsel (Claim II)*

Petitioner next contends that he was denied the ineffective assistance of counsel by
counsel's failure to: (1) call Paul Williams and Stanley Leonard as witnesses at trial despite his
request; and (2) move to dismiss or alternatively suppress evidence obtained as the result of
the violation of petitioner's speedy arraignment right.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel

15

protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Failure to Call Witnesses*

Petitioner contends that counsel should have called Paul Williams and Stanley Leonard

16

at witnesses. In support of this claim he offers the affidavits of these two witnesses. Williams avers that he is petitioner's nephew and Rasheed's cousin. On the day that Rasheed was arrested, he asked Williams, "If you hit somebody upside the head with a bat, will that kill him?" After Williams responded that it would, Rasheed said that he had chased a guy in Jackson and beat him with a baseball bat. Rasheed also said that when petitioner got there, the victim was already down, and that petitioner had tried to stop Rasheed. Stanley Leonard, in his affidavit, avers that Rasheed told him that Rasheed had beaten a man with a bat, and that he thought he had killed him. Rasheed did not mention petitioner at all.

Even assuming that the contents of petitioner's affidavit are true and petitioner did in fact inform his counsel of the availability of these two potential witnesses, and that both of these witnesses would have testified if called, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, Stanley Leonard's testimony has no exculpatory value. He merely states that Rasheed admitted to the killing. However, Rasheed did not discuss petitioner at all. Williams's testimony would have been helpful, had it been admitted, because Rasheed disclaimed any role by petitioner in the assault. However, it is doubtful that the witnesses would have been able to testify as to the statements made by Rasheed. The substance of the witnesses' testimony, if they had in fact testified, is hearsay, in that the statements alleged were out-of-court statements offered into evidence to prove the truth of the matter asserted. Thus, they are inadmissible. *See* MICH. R. EVID. 801(c), 802. These hearsay statements fall into the statement against penal interest hearsay exception. *See* MICH. R. EVID. 804(b)(3). However, under that exception, statements which are inculpatory as to the declarant but exculpatory to

17

the accused are admissible only if they bear sufficient indicia of trustworthiness. *See id.* Nothing in the statements themselves bear such indicia, nor are any other indicia of reliability present in the record.

Further, the Michigan Court of Appeals concluded that even if the testimony would have been admissible, petitioner could not show prejudice. This determination was reasonable. As the court of appeals explained, "[a]t best, their testimony might have raised a question whether [petitioner] actually struck Miles with the bat, but it would not have exculpated [petitioner] from being equally culpable in the murder as an aider and abettor." *Leonard*, 2000 WL 33415969, at *3, slip op. at 4. Because, as discussed above, petitioner was equally guilty regardless of whether or not he swung the bat, there is not a reasonable probability that the result would have been different had counsel called Williams and Stanley Leonard to testify to Rasheed's hearsay statement. *See United States v. Price*, 134 F.3d 340, 349 (6th Cir. 1998); *cf. Turner v. Armontrout*, 845 F.2d 165, 169-70 (8th Cir. 1988); *Jackson v. Renico*, 320 F. Supp. 2d 597, 607 (E.D. Mich. 2004) (Gadola, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Failure to Seek Dismissal*

Petitioner also contends that counsel was ineffective for failing to file a motion to dismiss or to suppress the police interview statements based on the delay between his arrest and arraignment. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although he does not cite the case, petitioner's claim is based on the Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In that civil rights case

18

under 42 U.S.C. § 1983, the Court held that the Constitution requires a defendant be given a reasonably prompt probable cause determination (such as arraignment) following his arrest, and that delay in arraignment greater then 48 hours after arrest is presumptively unreasonable. *See id.* at 55-58. However, petitioner has not cited, nor have I found, any cases holding that dismissal of the charges or suppression of evidence is an appropriate remedy for a *McLaughlin* violation.

To the contrary, although declining to reach the question the Supreme Court has stated that from the mere existence of such a violation "[i]t does not necessarily follow . . . that [the defendant] must be 'set free' or gain other relief." *Powell v. Nevada*, 511 U.S. 79, 84 (1994) (citation omitted). In analogous circumstances, the Supreme Court has held that neither dismissal nor release is an appropriate remedy for the government's failure to hold a detention hearing upon the defendant's first appearance as required by the Bail Reform Act. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990). Likewise, the federal courts uniformly have held that dismissal is generally not an appropriate remedy for a violation of the prompt arraignment requirements of Federal Rule of Criminal Procedure 5(a). *See, e.g., United States v. Jerningan*, 582 F.2d 1211, 1214 (9th Cir. 1978); *United States v. DiGregorio*, 795 F. Supp. 630, 634 (S.D.N.Y. 1992). Finally, the Michigan courts have explicitly addressed this question, and have concluded that dismissal is not an appropriate remedy for a *McLaughlin* violation. *See People v. Holly*, No. 214795, 2001 WL 755384, at *6 (Mich. Ct. App. Feb. 9, 2001) (per curiam).

In light of this case law, petitioner cannot show a reasonable probability that, had counsel moved to dismiss the charges or suppress evidence based on the alleged delay in

19

arraignment, the motion would have been granted. Petitioner thus cannot show that counsel was ineffective for failing to move to dismiss the charges or seek suppression on this basis. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the Michigan Court of Appeals's resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.,* 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

20

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: January 28, 2005

21